UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JOSEPH ALLEN** | **CIVIL ACTION NO. 25-0340** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **CAPTAIN MALCOLM, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Joseph Allen, a prisoner at David Wade Correctional Center ("DWCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately March 17, 2025, under 42 U.S.C. § 1983. He names the following defendants: Captain Malcolm, Lieutenant Richard Rogers, Sergeant Jeroy Byrant, and Sergeant Jackson.[1]

For reasons that follow, the Court should retain the following claims: (1) that Captain Malcolm sprayed Plaintiff with a chemical agent; (2) that Captain Malcolm and Lieutenant Rogers beat Plaintiff on a walkway; (3) that Malcolm and Rogers denied Plaintiff medical care for injuries following the beating and chemical agent; and (4) that Rogers retaliated against Plaintiff because he filed this suit. The Court should dismiss Plaintiff's remaining claims, including his request for a transfer and his claims against Defendants Byrant and Jackson.

## Background

Plaintiff states that on July 3, 2024, when he was sleeping inside his cell, he was awakened and instructed to "come to the bars and be restrained." [doc. # 6, p. 2]. Someone told

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

him that he was intoxicated, but he was not. *Id.* He claims that Captain Malcolm then sprayed him with a chemical agent. [doc. #s 1, p. 3; 6, p. 2].

Plaintiff appears to claim that before spraying him, Malcolm failed to call "medical" to ask if Plaintiff had asthma or heart problems. [doc. # 6, p. 2].

Plaintiff claims that after Malcolm sprayed him, Malcolm and Lieutenant Rogers took him to a walkway "between N3 and N4[,]" where they punched him on his ribs and face, injuring his lips and nose. [doc. # 1, p. 3]. In an amended pleading, he specifies that Malcolm punched him in the nose and "busted it," Rogers hit him in the ribs, and both defendants then beat him "real bad[.]" [doc. # 6, p. 2]. His entire "right side of [his] ribs" was swollen for six weeks, and his nose was "to[o] soft and hurting real bad." *Id.* To date, his chest hurts "bad every night[.]" *Id.* Plaintiff suggests that the walkway between N3 and N4 was outside where there were no cameras or witnesses. [doc. # 1, p. 3]. He states, "It was all a set up to stop me from making to the next higher level which are working Sig 1, 2, and then the compound. [sic]." [doc. # 6, p. 2].

Plaintiff claims that he asked Malcolm and Rogers for medical care after they beat him, but the defendants said, "no[,]" and returned him to his cell. [doc. # 1, p. 3]. In an amended pleading, he states that he asked to flush his eye, but Malcolm refused his request. [doc. # 6, p. 2]. Plaintiff suggests that when Malcolm and Rogers returned him to his cell, one or both defendants reiterated that Plaintiff was "not going to see medical." *Id.* (capitalization removed). Plaintiff responded that he intended to file a lawsuit against "the Institution and them[.]" *Id.*

On an unknown date, Plaintiff received Tylenol pills, but he states that the medication does not stop the pain. [doc. # 6, p. 2]. He did not receive any other medical care. *Id.* A nurse told Plaintiff that "they told him not to take [Plaintiff's] sick call form." *Id.*

Plaintiff alleges that in response to his statement that he intended to file a lawsuit, Defendants Malcolm and Rogers retaliated, holding him in a cell until he "heal[ed] up." [doc. # 1, p. 3].

Plaintiff claims that Lieutenant Rogers is retaliating against him, writing him up every time he gets "close to making The Board to the next level." [doc. # 6, p. 3]. Rogers' "write up's" are preventing Plaintiff from leaving the cell blocks. *Id.* He suggests that Rogers issued him "write ups" on January 1 and 3, 2025. *Id.*

Plaintiff claims that on March 28, 2025, Rogers retaliated by assigning him to a broken telephone. [doc. # 4, p. 2]. Plaintiff explains that Rogers was and is attempting to bait him into kicking the cell door so he can spray Plaintiff with a chemical agent and prevent Plaintiff from making the "review board to move up to the next level where they have TV's and video visits." *Id.*

Plaintiff claims that on March 31, 2025, Lieutenant Rogers refused Plaintiff his "1 hour rec yard." [doc. # 6, p. 3]. Plaintiff also claims that Rogers is placing his hands in Plaintiff's food. [doc. # 6, p. 3]. Rogers likewise told Plaintiff that he "stuck his dick" in Plaintiff's food and asked Plaintiff how it tasted. [doc. # 4, p. 3].

Plaintiff claims that in retaliation for the instant lawsuit, Rogers: (1) threatened to have someone rape Plaintiff if he did not drop the lawsuit; (2) listens to his telephone calls and divulges the content of the calls to other inmates; (3) threatened to "put the can of mace in [Plaintiff's] ass and slap [Plaintiff's] teeth" out of his mouth; and (4) told him that he "better stay in this camera cell A-Tier Cell-2 [as long as Plaintiff is] at DWCC." [doc. #s 4, pp. 2-3; 6, p. 3]. Plaintiff also claims that after he filed this suit, "they been coming after [him] doing things to

3

like sexually things and threats taking me into the N4 Courtroom violating my manhood . . . [sic]." *Id.*

Plaintiff claims that Sergeant Jeroy Byrant and Sergeant Jackson made sexual threats against him. [doc. # 4, p. 2].

In an amended pleading, Plaintiff claims that Captain Malcolm refuses him his "shower and ice call[.]" [doc. # 6, pp. 2-3].

For relief, Plaintiff appears to seek compensatory and punitive damages, as well as a transfer to another facility. [doc. #s 1, p. 4; 6, p. 2].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.*  A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555).  "[U]nadorned, the-defendant

unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Excessive Force**

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'" *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir.

Sept. 8, 2021) (quoting *Hudson*, 503 U.S. at 7). "This standard looks to an official's subjective intent to punish." *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. (citation and internal quotation marks omitted). Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

A.  Sprayed With a Chemical Agent

Plaintiff states that on July 3, 2024, when he was sleeping inside his cell, he was awoken and instructed to "come to the bars and be restrained." [doc. # 6, p. 2]. Someone told him that he was intoxicated, but he was not. *Id.* Plaintiff claims that Captain Malcolm then sprayed him with a chemical agent. [doc. #s 1, p. 3; 6, p. 2].

Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, the Court should retain this claim. To be sure, Plaintiff does not definitively describe his injury(ies) from the use of force. The injury therefore approaches de minimis status.[3] However, he does state that he requested medical care: he asked Captain Malcolm if he

---

[3] *See Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) ("Haddix also alleged that Corporal House once kicked him in the ankle to awaken him. Haddix alleged he suffered pain, but he did not allege that he suffered pain for any length of time or that he sought any medical treatment. Such a non-specific assertion of injury supports a finding that any injury was de minimis."); *see also Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (noting that "the use of *de minimus* force—including chemical sprays—can support an excessive-force claim[.]").

could flush his eye, but Malcolm refused his request. [doc. # 6, p. 2]. Further, "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017 (alteration in original) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (quoting *Brown*, 524 F. App'x at 79).

In other words, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 F. App'x at 79). This means that if the use of force was unreasonably excessive, Plaintiff only needs to show "some injury"—a bar he clears. *See Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (holding that nerve pain and a pulling pain was enough injury); *Bone v. Dunnaway*, 657 Fed. Appx. 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury."); *Schmidt v. Gray*, 399 Fed. Appx. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury).

As to the second factor above, Plaintiff suggests that there was little or no need for force. Before Malcolm sprayed him, he was sleeping inside his cell. [doc. # 6, p. 2]. And Plaintiff does not indicate that he defied any order or rule.

Considering the next factor, Plaintiff's allegations do not reveal any threat reasonably perceived by Malcolm. And turning to the final factor, there is no indication that Malcolm made any effort made to temper the severity of a forceful response.

B.  Beating at the Walkway Between N3 and N4

Plaintiff claims that after he was sprayed, Defendants Malcolm and Rogers took him to a walkway "between N3 and N4[,]" where they punched him on his ribs and face, injuring his lips and nose. [doc. # 1, p. 3]. In an amended pleading, he specifies that Malcolm punched him in the nose and "busted it," Rogers hit him in the ribs, and both defendants then beat him "real bad[.]" [doc. # 6, p. 2]. His entire "right side of [his] ribs" was swollen for six weeks, and his nose was "to[o] soft and hurting real bad." Id. To date, his chest hurts "bad every night[.]" Id. Plaintiff suggests that the walkway between N3 and N4 was outside where there were no cameras or witnesses. [doc. # 1, p. 3].

Construing Plaintiff's allegations liberally and in his favor, the Court should retain these claims against Captain Malcolm and Lieutenant Rogers. He states that he suffered significant injures. He also suggests that there was little or no need for force. Considering the next factor, Plaintiff's allegations do not clearly reveal any threat reasonably perceived by the defendants. Rather, Plaintiff suggests that they beat him in a "set up to stop [him] from making to the next higher level which are working Sig 1, 2, and then the compound. [sic]." This indicates that the force used was not "applied in a good-faith effort to maintain or restore discipline," it was instead employed maliciously and sadistically to cause harm. As to the final factor, there is no indication that the defendants made any effort made to temper the severity of a forceful response.

### 3. Statutory Violation

Plaintiff appears to claim that before spraying him, Malcolm broke the law in failing to call "medical" to first ask if Plaintiff had asthma or heart problems. [doc. # 6, p. 2]. He states that the "house passed a bill on that so that's breaking laws. [sic]." *Id.*

Of import, Plaintiff does not state that he has asthma or heart problems. Rather, he appears to claim that Malcolm violated an unspecified statute or bill by failing to follow a delineated procedure. To the extent the bill is not yet law, Malcolm did not violate any law. To the extent Plaintiff refers to a federal statute, he does not identify the statute.

To the extent Plaintiff refers to a state statute, his claim is not cognizable under Section 1983. "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). In *Mathews v. Bowie Cty., Tex.*, 600 F. App'x 933, 934 (5th Cir. 2015) (internal citations removed), for example, the plaintiff alleged that correctional officers violated a state statute, but the court opined: "his conclusory allegations that his treatment violated the Texas Administrative Code are insufficient to establish § 1983 liability. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."

The Court should dismiss this claim.

### 4. Medical Care

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an

10

inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff claims that he asked Malcolm and Rogers for medical care after they beat him, but the defendants said, "no[,]" and returned Plaintiff to his cell. [doc. # 1, p. 3]. In an amended pleading, he states that he asked to flush his eye, but Malcolm refused his request.

[doc. # 6, p. 2]. Plaintiff suggests that when they returned him to his cell, one or both defendants reiterated that he was "not going to see medical." *Id.* (capitalization removed).

On an unknown date, Plaintiff received Tylenol, but he states that the medication does not stop the pain. [doc. # 6, p. 2]. He did not receive any other medical care. *Id.* A nurse told Plaintiff that "they told [the nurse] not to take [Plaintiff's] sick call form." *Id.*

The Court should retain Plaintiff's claims against Defendants Malcolm and Rogers. Plaintiff plausibly alleges that he had serious medical needs—care for mace in his eye and for injuries suffered during the beating—and that Malcolm and Rogers were deliberately indifferent to a substantial risk of serious harm, failing to provide or arrange any medical care and even instructing a nurse not to help him. While Plaintiff received Tylenol on an unknown date for unspecified injuries, he suggests that he has not received any meaningful treatment for pain in his ribs for six weeks, a possible broken nose, and "bad" chest pain every night to date. *See Stevenson v. Toce*, 2024 WL 3897235, at *4 (5th Cir. Aug. 22, 2024) (finding a plausible claim where although defendants provided some treatment, the treatment was not intended to treat the plaintiff's condition).

**5. Retaliation**

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that

prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[4]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, Plaintiff first alleges that in response to his statement that he intended to file a lawsuit, Defendants Malcolm and Rogers retaliated, holding him in a cell until he "heal[ed] up." [doc. # 1, p. 3]. However, expressing his intent—outside of the "proper channels" at the facility—to file a lawsuit does not amount to an exercise of a constitutional right. *See Hanna v. Maxwell*, 415 F. App'x 533, 536 (5th Cir. 2011) (holding that the plaintiff did not exercise a constitutional right because, while complaining about the conduct of corrections officers through proper channels is a constitutionally protected activity, the plaintiff did not complain through the proper channels, rather, "he alleged retaliation after threatening to file a lawsuit during a confrontation with corrections officers."). The Court should dismiss this claim.

Next, Plaintiff claims that Lieutenant Rogers is retaliating against him, writing him up every time he gets "close to making The Board to the next level." [doc. # 6, p. 3]. Rogers' "write

---

[4] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

up's" are preventing Plaintiff from leaving the cell blocks. *Id.* He suggests that Rogers issued him "write ups" on January 1 and 3, 2025. *Id.* Plaintiff, however, does not allege that Rogers' actions were in response to Plaintiff's exercise of any constitutional right. The Court should dismiss this claim.

Next, reading Plaintiff's allegations liberally and in context, he claims that because he filed this lawsuit, Lieutenant Rogers retaliated and is retaliating as follows: (1) on March 28, 2025, Rogers assigned him to a broken telephone, attempting to bait him into kicking the cell door so he can spray Plaintiff with a chemical agent and prevent Plaintiff from making the "review board to move up to the next level where they have TV's and video visits"; (2) on March 31, 2025, Rogers refused Plaintiff his "1 hour rec yard"; (3) Rogers is placing his hands in Plaintiff's food; (4) Rogers told Plaintiff that he "stuck his dick" in Plaintiff's food and asked Plaintiff how it tasted; (5) he threatened to have someone rape Plaintiff if Plaintiff did not drop the lawsuit; (6) he listens to Plaintiff's telephone calls and divulges the content of the calls to other inmates; (7) he threatened to "put the can of mace in [Plaintiff's] ass and slap [Plaintiff's] teeth" out of his mouth; (8) he told Plaintiff that he "better stay in this camera cell A-Tier Cell-2 [as long as Plaintiff is] at DWCC"; and (9) made sexual threats against him. [doc. #s 4, pp. 2-3; 6, p. 3]. Plaintiff also suggests—again construing his pleading liberally due to his pro se and incarcerated status—that in response to this lawsuit, Rogers took him into a courtroom at the facility and "violat[ed] [his] manhood[.]" [doc. # 4, p. 3].

The Court should retain this claim against Lieutenant Rogers. Plaintiff exercised a constitutional right when he filed the instant lawsuit. He presents a chronology of events from which retaliation may be plausibly inferred: he filed this suit on approximately March 17, 2025,[5]

---

[5] Plaintiff signed his initial pleading on March 10, 2025. [doc. # 1, p. 4].

14

and he alleges that Rogers retaliated on March 28, 2025, on March 31, 2025, and before April 7, 2025 (when he filed his first amended pleading and alleged instances of retaliation). He also alleges that Rogers continues to retaliate in response to this ongoing lawsuit.[6] Moreover, he presents allegations of direct evidence of motivation when he alleges, for example, that Rogers threatened to batter him and said, "that's for filing [your] lawsuit." [doc. # 4, pp. 2-3]. He also alleges, as above, that Rogers threatened to have someone rape Plaintiff if he did not drop the lawsuit. [doc. # 6, p. 3].

Finally, while threats alone may not constitute a sufficient retaliatory adverse act,[7] Rogers' combined and continuous actions at least plausibly amount to retaliatory adverse acts capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *See generally Gonzales v. Gross*, 779 F. App'x 227 (5th Cir. 2019); *Andrade v. Hauck,* 452 F.2d 1071, 1071-72 (5th Cir.1971) (alleging denial of commissary privileges in retaliation for writing to a judge is sufficient to avoid dismissal of a § 1983 complaint).

## 6. Sexual Threats

Plaintiff alleges that Sergeant Jeroy Byrant and Sergeant Jackson made sexual threats against him. [doc. # 4, p. 2]. He does not elaborate.

---

[6] Plaintiff's chronology satisfies the second and fourth prongs of the standard above. *See Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) ("To prove intent and causation, the prisoner must at least establish a 'chronology of events from which retaliation may be plausibly inferred.'").

[7] *See Hoffman v. Stulga*, 464 F. App'x 229, 232 (5th Cir. 2011); *Smith v. Hebert*, 533 F. App'x 479, 483 (5th Cir.2013); *Hudson v. Univ. of Tex. Med. Branch*, 441 F. App'x 291, 292-93 (5th Cir. 2011); *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010); *Brown v. Craven*, 106 F. App'x 257, 259 (5th Cir. 2004).

The Court should dismiss these claims against Defendants Byrant and Jackson because "[v]erbal sexual harassment does not violate a detainee or inmate's constitutional rights[.]" *Jane Doe 5 v. City of Haltom City*, 106 F. App'x 906, 908 (5th Cir. 2004); *see Gipson v. Wilkinson*, 562 F. App'x 256 (5th Cir. 2014) ("Gipson's sexual harassment claim fails because verbal abuse and threatening language and gestures do not give rise to a cause of action under § 1983.").[8]

Likewise, verbal threats without more do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022).

**7. Conditions of Confinement**

In an amended pleading, Plaintiff claims that Captain Malcolm refuses him his "shower and ice call[.]"  [doc. # 6, pp. 2-3].

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure

---

[8] *See White v. Gutierez*, 274 F. App'x 349, 2008 WL 1745203 at *1 (5th Cir. April 15, 2008) (holding that an inmate claiming that prison guards sexually harassed him by denigrating his sexual orientation failed to state a claim); *Leflore v. Carroll-Montgomery RCF*, 2014 WL 1276494, at *3 (N.D. Miss. Mar. 27, 2014) (finding that "verbal taunts and rude gestures" do not amount to a Section 1983 claim); *Trackling v. Allen*, 2010 WL 5572774, at *1-2 (M.D. La. Nov. 23, 2010) (finding, where the plaintiff alleged only a single incident of sexual harassment occurring on a single date and involving no physical contact, that the plaintiff did not state a claim).

that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[9]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference.  *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[10]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

---

[9] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[10] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

Here, Plaintiff's claim is impermissibly conclusory and vague. He does not specify how often, how long, or to what extent he lacks a shower or ice and, consequently, he does not plausibly allege (i) that he was exposed to a substantial risk of serious harm or (ii) that he endured an extreme deprivation of any life necessity. *See Brumley v. Livingston*, 459 F. App'x 470, 472 (5th Cir. 2012) (affirming dismissal of a plaintiff's claim that he was denied showers "because he failed to properly allege that he was subjected to a substantial risk of harm."); *Wingfield v. Garner*, 2025 WL 1040649, at *4 (5th Cir. Apr. 8, 2025) (finding that the plaintiff failed to state a conditions of confinement claim because he "failed to plead what harm he experienced as a result [of the conditions] or what substantial risk of serious harm" the conditions created). The Court should dismiss this claim.

### 8. Request for Transfer

Plaintiff asks the Court to transfer him to a different facility. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of

the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. § 15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that the Court **DISMISS WITH PREJUDICE** the following claims and request for relief as legally frivolous and for failing to state claims on which relief may be granted: (1) that before spraying Plaintiff, Captain Malcolm failed to call "medical" to ask if Plaintiff had asthma or heart problems; (2) that Captain Malcolm and Lieutenant Rogers retaliated in response to Plaintiff's statement that he intended to file a lawsuit; (3) that Lieutenant Rogers retaliated by writing him up every time he gets "close to making The Board to the next level"; (4) that Sergeant Jeroy Byrant and Sergeant Jackson made sexual threats against him; (5) that Captain Malcolm refuses him his "shower and ice call"; and (6) Plaintiff's request for a transfer to a different facility.   The Court should retain Plaintiff's other claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 15th day of May, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge